## LONG et al. v. WHITE et al.*
### No. 4429.

Court of Appeal of Louisiana. Second Circuit.

March 6, 1933.

Dimick & Hamilton, of Shreveport, for appellants.

Barksdale, Bullock, Warren, Clark & Van Hook, of Shreveport, for appellees.

*Rehearing granted March 31, 1933.

MILLS, Judge.

On the 31st day of January, 1931, at about 2 o'clock in the afternoon, in the street intersection of Thornhill, running north and south, and Ontario, running east and west, in the city of Shreveport, a Chevrolet cabriolet, driven by Patrick J. White, Jr., 17 years old, struck the rear left side of a Ford light delivery truck driven by Houston Long, 26 years old, knocking it over and causing damage and injuries which form the basis of this suit.

Houston Long was taking his mother, two little sisters, aged eight and nine, and a small load of odds and ends to the new family home at Greenville, Tex. One of the girls was sitting between Houston on the left and his mother on the right. The other was on her mother's lap. They had backed out of a garage less than a block from the intersection, and were proceeding east on Ontario street at a speed of about 18 or 20 miles per hour. Before entering the intersection they saw the Chevrolet coming from the left going south on Thornhill, about a third of a block away. Houston, thinking that he had time to safely do so, proceeded across the intersection. He had gone about four feet past its center on his right-hand side of Ontario street when the left front wheel and fender of the Chevrolet struck the rear left wheel of the Ford. The Chevrolet ran on down the street for half a block before stopping. Strangely enough, no eyewitnesses to the collision were offered on the stand except the occupants of the two cars.

The four boys in the Chevrolet, three on the seat and one in the rumble seat in the rear, were on their way to a fraternity meeting. White had driven south down Fairfield, turned east into Monrovia, and then south into Thornhill one block from Ontario. The young man in the rumble seat saw nothing of the accident before the cars hit. He does not remember how the Chevrolet was being run. The boy in the middle on the front seat does not remember how the Chevrolet was being driven beyond the fact that it slowed down a little at Ontario immediately before the crash. He saw nothing until the truck "flashed across in front of our car." He says the whole thing happened so suddenly that he did not think it happened.

The young man on the right-hand side of the seat is very indefinite in his testimony, but significantly says, "why the Ford seemed to burst out in front of us." He says it was in the middle of Thornhill when struck, and that he did not see it until after they had gotten into the intersection.

Young White's explanation of the accident is that each car, approaching the intersection at a moderate speed, slowed down; that he thought the driver of the Ford meant for him to pass so he started forward, whereupon the Ford also started forward, dashed in front of him, so that the collision was unavoidable.

The physical facts and his testimony taken as a whole fail to sustain this defense. He says that because of an approaching car he changed into low gear and came to almost a complete stop before turning from Monrovia into Thornhill, just one block from the place of collision; that he proceeded in second gear at a speed of not over 15 miles an hour, slowing down as he neared Ontario; that he saw the Long car, and that both were going slow; that Long checked his speed so much at the intersection that he thought he was going to stop and let him across; that as he was crossing the Ford appeared in front of his car; that he does not know how it happened, but that as he cut to the right he struck the end of the Ford truck. He says: That he was under the impression that he entered the intersection first; that as he saw Long's car he put his foot on the clutch, which threw out the gears and left him coasting; that the truck had not passed the center line of Thornhill when the cars struck; that his left wheel was about on the center line; that he did not attempt to swerve his car to the right until immediately before the impact; that after the collision, rather than block the driveway into a filling station on the corner, he drove well down the block before he stopped. This despite the fact that he saw the truck turn over and the people spill out.

On cross-examination he says that at the speed he was going he could have jammed on the brakes and stopped on a dime. His testimony is so confused as to be almost unintelligible. For instance, when asked how the accident happened, he said:

"A. Well, as I say, we both slowed up and I thought he was going to give me the right of way when I started across. I had gotten in the intersection, when the truck took a burst of speed. I attempted to swerve to the right, cut around this car, put on the brakes, or throw the clutch in, put the car in neutral, as best I could and thought I had passed him."

"Q. You put the brakes on at the instant of the accident? A. No, was in the act of putting the brakes on, understand, but they were not on."

He says that when the truck shot out before him it took him entirely by surprise. He admits that just before reaching the intersection he was talking to the boys, and that there is a high terrace on the corner of Thornhill and Ontario that blocked his view of Ontario; that his normal rate of speed is 30 miles per hour; and that he was making that going out Fairfield avenue.

In rebuttal, Mrs. B. C. Garrett, wife of Dr. B. C. Garrett, living at 924 Monrovia, testifies: That at the time of this accident she

was sitting on the abutment to her front steps; that she saw the Chevrolet driven by White pass her house coming from Fairfield; that instead of stopping before turning into Thornhill as testified to, it went around the corner about on two wheels, the same way it came into Monrovia from Fairfield; that she was watching particularly as the Chevrolet turned the corner into Fairfield; that she heard the crash and ran down to the scene of the accident.

The above recital is also contradicted by the answer which alleges that White saw the truck approaching at a very rapid rate of speed; that he immediately applied his brakes and slowed down; that the truck, so heavily laden with household goods as to be "top heavy and very unwieldy," dashed in front of him.

■ From the above we think it is apparent that the young man is trying to correctly describe the accident, but at the same time absolve himself from fault. We think it is clear from his testimony that all he really knows about the collision is that the truck suddenly loomed up before him too close for him to avoid hitting it; that he clearly was negligent in not keeping a proper lookout and in not having his car under control as he entered the intersection.

■ The injuries to Houston R. Long consisted of a broken bone in his hand, which at the time of trial four months after the accident was still so weak that he could not grasp small objects; a lacerated back and twisted neck; a spreading of the muscles in the thighs which leaves him without the full use of one leg. Dr. Heard testifies that the trouble should clear up by the end of the year. He was allowed $1,082.50. We think this should be reduced to $1,000, as there is no proof of other damage than personal injuries.

■ Mrs. Lela Houston Long struck the pavement on her right side and shoulder, breaking her collar bone. Her arm at the time of trial would still swell and pain her. She was compelled to visit the hospital eight or ten times, and was not able to go home for four weeks. She hurt her back and neck and sprained a wrist. The doctor says that by the end of 1932 she should be all right.

We think she was properly allowed $1,200.

■ The little girl, Bettie Jean Long, was hurt on her right side, bruised her head, was skinned up on the face and body and suffered a black eye. She was confined for a week and a half, or two weeks. It is contended that the $100 allowed her is excessive. We do not think so.

■ The judgment of the lower court allowed the father, Benjamin V. Long, $283.25 for damages. The only evidence offered in support of these items is the testimony of G. C. Long, his brother, which was strongly but unsuccessfully objected to. He was permitted to testify that he paid about $83 and a few cents for the repair of the truck; that he took care of the costs and made up a statement for his brother; that the statement in the petition is correct. The statement contains such items as clothing of Mrs. Long ruined and damaged, truck hire in place of the truck damaged, driver and expenses in return of car, additional household help on account of injury to Mrs. Long, expense of returning to Shreveport for further examination, incidental expenses, etc. We think the objection to this testimony should have been sustained, as damages, like anything else, must be sufficiently proven for the court to determine their cause, nature, and reasonableness.

■ Appellants file in this court an exception of no cause of action based upon the contention that the petition does not allege any facts that would constitute negligence on the part of defendants. The petition states: That the truck, having proceeded beyond the center of the intersection when struck, could have easily been avoided by swerving to the right had the driver of the Chevrolet been paying proper attention to his driving; that the truck, having entered the intersection first, had the right of way.

We think this is sufficient allegation of negligence. The exception of no cause of action is overruled.

We therefore conclude that the judgment of the lower court should be amended by reducing the amount allowed Houston R. Long from $1,082.50 to $1,000, and by rejecting the personal demands of Benjamin V. Long and Houston R. Long for damages other than for personal injuries as of nonsuit.

As amended, the judgment is affirmed.